UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEONARD VISCITO, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:18-30132-MGM |
| | ) | |
| NATIONAL PLANNING | ) | |
| CORPORATION, JOHN JOHNSON, | ) | |
| MAURA COLLINS AND JOHN AND/OR | ) | |
| JANE DOES, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING PLAINTIFF'S AND DEFENDANTS'
MOTIONS TO COMPEL DISCOVERY
(Dkt. Nos. 63, 65)

ROBERTSON, U.S.M.J.

I.    Introduction

Plaintiff Leonard Viscito ("Plaintiff") brings claims against the defendants, National

Planning Corporation ("NPC"), John Johnson, Maura Collins and an unspecified number of John

or Jane Does (collectively, "Defendants") under the Fair Labor Standards Act, 29 U.S.C. § 201 *et*

*seq.* (Count I) ("FLSA"); the Massachusetts Independent Contractor Law, Mass. Gen. Laws ch.

149, § 148B (Count II); the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count

III) ("MWA"); and, against NPC only, for Unjust Enrichment (Count IV); Breach of the Implied

Covenant of Good Faith and Fair Dealing (Count V); and Quantum Meruit (Count VI) (Dkt. No.

54, Second Am. Compl., ¶¶ 29, 33, 37, 42, 47, 50).  Before the court are Plaintiff Leonard

Viscito's Motion to Compel Discovery and for Sanctions and Request for Expedited Ruling

(Dkt. No. 63) ("Plaintiff's Motion") and Defendants' Motion to Compel Discovery (Dkt. No. 65)

("Defendants' Motion").  The court heard argument from the parties on September 4, 2019 and

took the motions under advisement (Dkt. No. 82).  For the reasons set forth below, Plaintiff's

Motion is granted in part and denied in part and Defendants' Motion is granted in part and denied in part.

## II.     Factual Allegations in Second Amended Complaint

In Plaintiff's Second Amended Complaint, he alleges that he is a resident of Florida who worked for NPC, a national financial services corporation, as a registered representative, insurance agent, and investment advisor from approximately November 14, 2013 through November 29, 2017 out of an office located in Springfield, Massachusetts (Second Am. Compl. ¶¶ 2, 16-17).  Plaintiff alleges that under the Independent Contractor Agreement he executed, NPC "exercised a substantial degree of control over" how Plaintiff conducted his business (Second Am. Compl. ¶ 18), and that he was misclassified as an independent contractor (Second Am. Compl. ¶ 24).  He alleges that he was "therefore forced to incur substantial costs, fees and deductions (including, among other things, for rent, utilities, supplies, payroll/commission expenses, professional fees, advertising, travel expenses, entertainment, recruiting, insurance, charges, payroll taxes and interest) that he would not have incurred had he been properly classified as an employee" and that he was deprived of benefits, including retirement benefits, vacation time, and reimbursement of business expenses (Second Am. Compl. ¶ 24).

## III.    The Parties' Discovery Motions

### A.  General Legal Principles

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless otherwise limited by court order, the scope of discovery is as follows:  Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case … .  Information within this scope of discovery need not be admissible in evidence to be discoverable."  The proportionality provision was added to Fed. R.

Civ. P. 26 (b)(1) in December 2015 to emphasize that there are intended to be limits on the breadth of discovery to which a party is entitled.  *See, e.g., Fed. Energy Regulatory Comm'n v. Silkman*, No. 1:16-cv-00205-JAW, 2017 WL 6597510, at *6-7 (D. Me. Dec. 26, 2017). Nonetheless, "[a]s a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action."  *Cherkaoui v. City of Quincy*, Civil Action No. 14-cv-10571-LTS, 2015 WL 4504937, at *1 (D. Mass. July 23, 2015) (quoting *E.E.O.C. v. Electro-Term, Inc*., 167 F.R.D. 344, 346 (D. Mass. 1996)).  "[B]ecause discovery itself is designed to help define and clarify the issues, the limits set forth in Rule 26 must be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case."  *Green v. Cosby*, 152 F. Supp. 3d 31, 34 (D. Mass. 2015) (quoting *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig*., MDL No. 13-2419-FDS, 2013 WL 6058483, at *4 (D. Mass. Nov. 13, 2013)).  The party seeking information in discovery has the burden of showing its relevance.  *See, e.g., Cont'l W. Ins. Co. v. Opechee Constr. Corp.*, Civil No. 15-cv-006-JD, 2016 WL 1642626, at *1 (D.N.H. Apr. 25, 2016) (citing *Caouette v. OfficeMax, Inc.*, 352 F. Supp. 2d 134, 136 (D.N.H. 2005)); *see also Whittingham v. Amherst Coll.*, 164 F.R.D. 124, 127 (D. Mass. 1995); *Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984).  Conversely, "[w]hen a party resists the production of evidence, it 'bears the burden of establishing lack of relevancy or undue burden.'"  *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (quoting *Sánchez-Medina v. UNICCO Serv. Co.*, 265 F.R.D. 24, 27 (D.P.R. 2009)); *see also Cont'l W. Ins. Co.*, 2016 WL 1642626, at *1.  Generally, a court will not "compel [production] of what does not exist."  *Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010).

B.  Plaintiff's Motion

In Plaintiff's document request 9, he asked NPC to produce:

> Any and all documents concerning the benefits made available by NPC to
> individuals classified by NPC as employees, including but not limited to sick
> leave, vacation, paid time off, health, life, dental and disability insurance,
> retirement benefits, health savings accounts, and performance bonuses.

(Dkt. No. 63 at 2).  He contends, and Defendants do not dispute, that documents responsive to

this request are generally relevant for discovery purposes because they bear on Plaintiff's

calculation of his alleged damages.  By the date of the hearing on the parties' discovery motions,

NPC had produced copies of all of its benefit plans, including so-called "top hat plans"

applicable exclusively to top management, and was close to completing its assembly of

employee manuals that were in effect while Plaintiff was affiliated with NPC.  At the hearing,

Plaintiff could not identify any other document or category of documents that would be

responsive to his document request 9.  He contended that he was nonetheless entitled to a court

order requiring production because Defendants had not abandoned a lack of relevance objection

asserted to preserve their legal position that Plaintiff was properly classified as an independent

contractor who was not entitled to benefits.  Plaintiff's speculative assertion that there might be

additional documents that he could not identify and whose relevance he could not articulate is

not a basis for a court to enter a discovery order, and the court declines to do so.  *See P.R. Med.*

*Emergency Grp., Inc. v. Iglesia Episcopal Puertorriqueña, Inc.*, 318 F.R.D. 224, 229 (D.P.R.

2016) (declining to find that the documents produced failed to satisfy the moving party's

requests where the court "ha[d] no facts at its disposal" to conclude that the production was

deficient in content).  Plaintiff's Motion is denied except to the limited extent that Defendants

must ensure that their response to Plaintiff's ninth document production request complies with

Fed. R. Civ. P. 34(b)(C), which requires the responding party to state whether it has withheld

documents from production on the basis of its objection to the request.

    C.  <u>Defendants' Motion</u>

    1.  Documents Related to Plaintiff's Taxes, Income, and Deductions

    In Defendants' document requests 7, 8, 9, 29, and 30, they asked for (in summary): (a)

Plaintiff's complete federal, state, and local income tax returns, including all supporting

schedules and attachments for the years 2012 to the present; (b) documents showing all sources

of revenue generated by Plaintiff individually or through his businesses from January 2013 to

November 2017; (c) any documents not otherwise identified that show Plaintiff's income,

benefits, or expenses for any tax year in which Plaintiff was affiliated with NPC; and (d) all

documents that show Plaintiff's work-related income, expenses, and benefits from January 2013

through November 2017 (Dkt. No. 66-1 at 2-3).  Defendants agreed that any information related

to Plaintiff's wife's income could be redacted from tax returns and related documents and that

documents responsive to these requests would be subject to the discovery confidentiality order

docketed in the instant case on April 23, 2019 (Dkt. No. 42).  Plaintiff objected to producing his

tax returns and any other financial information except for documents showing the terms of his

affiliations with NPC or with any other insurance or financial services agency, brokerage,

broker-dealer, or company from 2013 through 2017 (Dkt. No. 66-2 at 5-7, 8-10, 19-20).

    It is well-settled in the First Circuit that "income tax returns are discoverable where the

returns are relevant to the claims of the parties and the information is not readily available in

another form."  *Bourne v. Arruda*, Civil No. 10-cv-393-LM, 2012 WL 1107694, at *3 (D.N.H.

Apr. 2, 2012) (ordering production of income tax returns where the plaintiff's damages claim

included a claim for lost income) (citing *Buntzman v. Springfield Redev. Auth.*, 146 F.R.D. 30,

32 (D. Mass 1993); *Enterasys Networks, Inc. v. DNPB, LLC*, Civil No. 04-CV-209-PB, 2006 WL 1644598, at *1 (D.N.H. June 12, 2006)).

Defendants have more than demonstrated the relevance of Plaintiff's tax returns and supporting documentation for the years 2012-2018.  Plaintiff's damages claim as stated in his initial disclosures is for lost compensation in the form of taxes he paid from January 8, 2015 to January 8, 2018 (calculated as a loss of $413,197), lost benefits (calculated as a loss of $280,241), business expenses he claims he paid from January 8, 2015 to January 8, 2018 ($59,182), and a lost opportunity to contribute to a company 401K and other deferred compensation plans resulting in an alleged loss of an unknown amount (Dkt. No. 78-1 at 6). Plaintiff leaves unexplained how the figures he provided were calculated or could be challenged or verified without access to his tax returns, all attached schedules, and supporting documents. He has pointed to no "reasonable substitute[]" for production of complete federal, state, and local tax returns as a means of establishing the facts about his income.  *Buntzman*, 146 F.R.D. at 32. By itself, the foregoing is sufficient to require production of these documents, but there is more.

As Defendants contend, Plaintiff's tax returns, schedules, and supporting documentation are likely to contain information about the location in which he worked while affiliated with NPC, the extent of his business interests outside of NPC while he was affiliated with NPC, and his investment in his businesses.  NPC was a corporation with a principal place of business in California and Plaintiff's agreement with NPC included a California choice of law provision. While Plaintiff denies that these facts matter because most of his business for NPC was with Massachusetts clients, these are factors weighing against Plaintiff's position that bear on the relationship of Massachusetts and the possible relationship of other states to the person, thing, or occurrence involved in this lawsuit and to the significant question of whether Massachusetts law

applies to the business relationship that existed between Plaintiff and NPC.  *See Dow v. Casale*,

989 N.E.2d 909, 913-14 (Mass. App. Ct. 2013) (finding that the MWA applied where the

employer did business solely in Massachusetts and had its only office in Massachusetts; the

plaintiff, who lived in Florida, was its only salesperson; all paperwork related to the plaintiff's

work was generated and processed in Massachusetts; and the plaintiff's compensation was issued

by the employer in Massachusetts).  The questions of where Plaintiff resided and his physical

location when he performed work for NPC are important in the analysis of whether Plaintiff is

entitled to invoke the protections of Massachusetts law.  *See id.; see also Levesque v. Schroder*

*Inv. Mgmt. N. Am., Inc.*, 368 F. Supp. 3d 302, 312 (D. Mass. 2019) (in determining the place

with the most significant relationship to the parties' business affiliation, the court considers,

among other factors, the place of performance, the domicile, residence, nationality and place of

incorporation of the parties, and the protection of justified expectations).  Further, for purposes

of Plaintiff's FLSA claim, which Plaintiff has failed to address in his opposition to Defendants'

Motion, "'[t]he focal point is whether the individual is economically dependent on the business

to which he renders service or is, as a matter of economic fact, in business for himself.'"

*Venegas v. Glob. Aircraft Serv., Inc.*, 159 F. Supp. 3d 93, 106 (D. Me. 2016) (alteration in

original) (quoting *Bolduc v. Nat'l Semiconductor Corp.*, 35 F. Supp. 2d 106, 112 (D. Me. 1998)).

Among the six factors considered by the court are "'the worker's opportunity for profit or loss'"

and the extent of "'the worker's investment in the business.'"  *Id.* (quoting *Bolduc*, 35 F. Supp.

2d at 112); *see also Chebotnikov v. Limolink, Inc.*, Civil Action No. 14-13475-FDS, 2017 WL

2888713, at *12 (D. Mass. July 6, 2017).  Plaintiff's 2012-2018 federal, state, and local tax

returns, attached schedules, and supporting documentation will include information about the

sources of Viscito's income, the extent of his business undertakings, and his investment in those

undertakings during the period of his affiliation with NPC, and, as Defendants contend, are likely to provide information about his geographical location because there is likely to be information about business-related travel during the relevant period in the documents.

In the words of another session of this court in a case in which the plaintiffs asserted claims under, *inter alia*, the FLSA and the MWA:

> Plaintiffs … assert that they failed to turn [their tax returns] over in discovery because in their minds, they are not relevant to the claims they have asserted. … I have in other employment cases found the tax returns of the representative plaintiffs to be highly relevant and discoverable. I am at a loss as to why a plaintiff asserting a claim for failure to pay appropriate wages would take the position that such information is not discoverable. I will address any potential ramification of the Plaintiffs failure to turn such information over to the Defendants during discovery at a later date. That being said, I *strongly* suggest that Plaintiffs provide Defendants with their tax returns and any information responsive to Defendants' discovery requests regarding such information.

*Torrezani v. VIP Auto Detailing, Inc.*, 318 F.R.D. 548, 555 n.4 (D. Mass. 2017).

For the foregoing reasons, so much of Defendants' Motion as seeks to compel production of Plaintiffs' 2012-2018 federal, state, and local tax returns, with all attached schedules and all supporting documentation, is granted. Information about Plaintiff's wife's income may be redacted and the tax returns and related documents may be marked confidential under the parties' discovery confidentiality order. Defendants' Motion is denied without prejudice as to other documents, if any, that may be responsive to Defendants' document production requests 7, 8, 9, 29, and 30. If Defendants identify additional specific documents responsive to these requests that are relevant and not duplicative of Plaintiff's tax returns, and a conference pursuant to Fed. R. Civ. P. 37(a)(1) fails to resolve a dispute about production of any such documents, Defendants may renew their motion to compel as to any such documents.

2. Documents Concerning Plaintiff's Physical Location During his Affiliation with NPC

Defendants' document request number 12 asked for "[a]ll documents related to [Plaintiff's] travel to and from Massachusetts, or to and from any other destination, between January 2014 and November 2017" (Dkt. No. 66-2 at 11).  Plaintiff agreed to produce "[d]ocuments in Plaintiff's possession that evidence travel for business purposes by plane between Florida and Massachusetts" and "[d]ocuments in Plaintiff's possession that evidence travel for business purposes by plane between Florida or Massachusetts and locations where [NPC] held conferences that Plaintiff attended" (Dkt. No. 66-2 at 11).  He did not live up to this commitment.  All he produced was a spreadsheet showing the occasions when he traveled to NPC-sponsored events and a single flight itinerary for a 2015 flight from Las Vegas to Orlando (Dkt. No. 66 at 10).  Plaintiff renews his contention that this information is irrelevant and contends, without any accompanying explanation or evidence, in the form of an affidavit or otherwise, that it would be unduly burdensome for him to search for documents responsive to this request.

As to the first point, he argues that he performed a majority of his NPC work for clients in Massachusetts using an office in Massachusetts as his base of operations and that he has, essentially, conceded that he was not physically present in Massachusetts for most of the time he was affiliated with NPC.  He points to an affidavit filed in support of his partial summary judgment motion that, he claims, shows that he has not held himself out as present in Massachusetts during the relevant period for purposes of supporting his legal position (Dkt. No. 59).  Plaintiff's affidavit represents, among other things, that:

- He has, since 1997, operated Viscito Financial Services, a sole proprietorship, with its offices at 1211 Boston Road in Springfield, Massachusetts (Aff. ¶ 2 at 1);

- He executed his agreement with NPC at his Massachusetts office (Aff. ¶ 13 at 3);

- NPC annually audited his books and records at his Massachusetts office (Aff. ¶ 17 at 3);

- He maintained all his books and records for NPC business at his Massachusetts office (Aff. ¶ 18 at 3);

- He provided financial and insurance services from his main office in Massachusetts as specified in his agreement with NPC (Aff. ¶ 26 at 4);

- During his tenure with NPC, "substantially all of [his] revenue was generated from client relationships … with … individuals in Massachusetts" (Aff. ¶ 33 at 5)

- His "relationship with those clients necessary to service and continue to earn revenue from them was maintained through the Massachusetts office. "Many of those servicing relationships included live meetings in [his] Massachusetts office at various times during the calendar year" (Aff. ¶ 34 at 5);

- Client visits to his home office in Florida were extremely rare (Aff. ¶ 44 at 6);

- He owned and continues to own a home in Massachusetts (Aff. ¶ 45 at 6); and

- "All of [his] investment client relationships emanated from [his] business activities with clients in Massachusetts" (Aff. ¶ 48 at 6).

Fairly read, Plaintiff's affidavit makes a series of assertions about connections to Massachusetts (as it must if Massachusetts law is to apply), including artfully drafted statements that could be read as implying physical presence in Massachusetts on a frequent basis. As previously noted, Plaintiff's domicile and residence during his affiliation with NPC, while not decisive, are among the factors that are relevant for purposes of determining whether he is entitled to invoke Massachusetts law. Aside from a bald assertion, he has provided nothing to substantiate his assertion that it would be unduly burdensome to provide documents in his possession, custody or control, *see* Fed. R. Civ. P. 34(a)(1), documenting his travels to and from Massachusetts and Florida and to and from Florida and other locations during his affiliation with NPC. *See Cooper v. Charter Commc'ns, Inc.*, Case No. 3:12-cv-10530-MGM, 2016 WL 128099, at *2 (D. Mass. Jan. 12, 2016) (citing *Bourne*, 2012 WL 1107694, at *4) (a party resisting discovery has the burden of showing how providing complete responses to discovery

requests would be unduly burdensome).  Plaintiff may ultimately prevail on his argument that Massachusetts law applies, but he is not entitled to deprive Defendants of access to evidence that might, depending on what it reveals, enable them to establish a factual basis for the opposing argument.  For these reasons, so much of Defendants' Motion as seeks to compel the production of documents responsive to their document production request number 12 is granted.

       3.   Materials Relating to Plaintiff's Business Activities

Defendants have requested documents related to the entire scope of Plaintiff's business activities from January 2013 through November 2017.  Plaintiff has objected to these requests on a variety of grounds.  An overarching theme, however, is that the only information that is relevant and that he is therefore required to produce is information about his relationship with NPC because his misclassification claims are based on the specifics of his business relationship with NPC.  That argument ignores that, as to Plaintiff's claims under the FLSA and the MWA, the full extent of Plaintiff's business activities while he was affiliated with NPC is relevant to the questions of the extent to which NPC exerted control and direction over Plaintiff, *see Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 113-17 (D. Mass. 2015), and the degree to which Plaintiff was economically dependent on NPC or, "'as a matter of economic fact, in business for himself.'"  *Venegas*, 159 F. Supp. 3d at 106 (quoting *Bolduc*, 35 F. Supp. 2d at 112).  At the discovery stage, this relevance objection by Plaintiff cannot carry the day for him.

Defendants' specific requests related to Plaintiff's business activities and Plaintiff's objections thereto are set forth and addressed below.

       a.   Individuals Who Worked for Plaintiff

Defendants' document request 38 asked for all documents related to any individuals whom Plaintiff employed, contracted with, or engaged to work for him from January 2013

through November 2017.  Plaintiff objected that the request was vague as to the meaning of the

term "engaged" and "overbroad and unduly burdensome as it [sought] documentation unlimited

in scope regarding the private and confidential information of nonparties" (Dkt. No. 66-1 at 4).

Plaintiff did not produce any responsive information nor did he comply with Fed. R. Civ. P.

34(b)(2)(C) ("[a]n objection must state whether any responsive documents are being withheld").

Plaintiff has not made any attempt to explain why the discovery confidentiality order would not

adequately protect the privacy interests of third parties.  The court, therefore, considers this

objection waived for purposes of this motion.  Defendants have demonstrated the relevance of

information about work assignments of individuals employed by Plaintiff and their compensation

arrangements during the relevant time, *see Ruggiero*, 137 F. Supp. 3d at 110, 122-24, and

Plaintiff has failed to establish a valid objection to producing responsive documents.

At the hearing, Plaintiff represented to the court that there were no offer letters or

position descriptions for any individual who worked for him at the relevant time.  The court will

not order the production of documents that do not exist.  *See Harris*, 271 F.R.D. at 370.  To the

extent Plaintiff had written or electronically available guidelines, training materials, or an

employment manual for his employees that was in effect at any time from January 2013 to

November 2017, he must produce copies of such documents.  *See Ruggieiro*, 137 F. Supp. 3d at

110.  Further, Plaintiff must serve a revised response to Defendants' document request 38 that

complies with Fed. R. Civ. P. 34(b)(2)(C).  Otherwise, Defendant's Motion to compel Plaintiff to

produce documents responsive to its request number 38 is denied.

b.  Plaintiff's Work Responsibilities and Outside Engagements

Defendants' document request 15 sought documents in which Plaintiff described his job

responsibilities, services performed, or work experience during his affiliation with NPC,

including resumes, applications to provide services for businesses other than NPC, and internet

postings and messages about his business activities (Dkt. No. 66 at 14).[1]  Documents and/or

electronically stored information which reflect representations made by Plaintiff about the scope

of his business(es), the services he offered, and his attempts, if any, to solicit affiliations with

businesses other than NPC are relevant to the questions of the extent to which NPC controlled

and directed Plaintiff's business activities and his associations, if any, with business entities

other than NPC while he was affiliated with NPC.  That Plaintiff could not use any broker-dealer

other than NPC does not establish that information responsive to Defendants' fifteenth document

production request is not relevant.  *See, e.g., Ruggieiro*, 137 F. Supp. 3d at 114-16.  Plaintiff's

offhand assertion that "[n]othing relevant can be gained by compelling [Plaintiff] to conduct a

massive search for such communications" is hardly sufficient to satisfy his obligation to

demonstrate in concrete terms that a search for responsive information would be unduly

burdensome (Dkt. No. 72 at 10).  *See, e.g., Autoridad de Carreteras y Transportacion*, 319

F.R.D. at 427; *Sánchez-Medina*, 265 F.R.D. at 27; *see also Cont'l W. Ins. Co.*, 2016 WL

---

[1] The full text of Defendants' document production request number 15 was for:

> All documents in which you described or describe your job responsibilities,
> services performed, or work experience from November 2013 to the present,
> including but not limited to all resumes you have prepared or sent to others; all
> letters, faxes, or e-mails you have sent to prospective employers or in connection
> with engagement as an independent contractor; all employment applications you
> have completed with prospective employers; all Internet messages or postings you
> have created; and all applications you have made for loans, lines of credit, etc. in
> which you described in any way your affiliation with NPC.

(Dkt. No. 66-1 at 5).  Subject to objections, including the objection that information related to
Plaintiff's business activities after he severed his relationship with NPC was irrelevant, Plaintiff
agreed to produce "documents in his possession related to his time at NPC" (Dkt. No. 66-1 at 5).
Defendants represent that Plaintiff has produced nothing he has identified as responsive to this
request (Dkt. No. 66 at 13).

1642626, at *1.  Accordingly, Defendants' Motion to compel production of documents responsive to their fifteenth request is granted, limited to the timeframe of Plaintiff's affiliation with NPC.[2]

    4.   Documents Related to Plaintiff's Alleged Injuries and Damages.

    Finally, Defendants' eighteenth document request sought production of all documents relating to Plaintiff's claims for damages, including the amount and type of damages sought (Dkt. No. 66-1 at 6).  In addition to Defendants' document request, Fed. R. Civ. P. 26(a)(ii) requires a party seeking damages – Plaintiff in this case – to compute each category of damages and make available for inspection and copying all unprivileged documents and other evidentiary material on which each computation is based by no later than two weeks prior to the Fed. R. Civ. P. 16(b) initial scheduling conference.  *See* Fed. R. Civ. P. 26(a)(1)(C) (a party must make its initial disclosures at or within 14 days of the parties' Rule 26(f) conference, which must be held no later than 21 days before the initial scheduling conference).  Plaintiff's computation of damages claimed by him in his November 14, 2018 initial disclosures exceeded $750,000 (Dkt. No. 78-1 at 6).  He did not comply with his obligation to make available the documents on which this calculation was based by November 18, 2018 or at any time thereafter, and, on the theory that a majority, or all, of the relevant documents are in Defendants' possession, he has failed to produce any documents in response to Defendants' eighteenth document request (Dkt. No. 66-1

---

[2] Defendants requested, and moved to compel the production of, schedules, calendars, day timers or daily planners, or time records or timecards setting out the hours Plaintiff worked providing advisory services through NPC.  Plaintiff has represented that he did not maintain calendars other than his NPC "Red Tail" calendar which he had produced.  Because the court will not order the production of documents that do not exist, the court denies so much of Defendants' Motion as seeks to compel production of documents responsive to its document requests 19 and 36.  To the extent these requests were aimed at documents showing the location from which Plaintiff worked during his affiliation with NPC, this aspect of the request is addressed adequately by the court's ruling on Defendants' document request 12.

at 6).  "Courts have held that a responding party is required to produce documents in [his]

possession, custody, or control regardless of whether the requesting party is already in

possession of the requested documents."  *P.R. Med. Emergency Grp., Inc.*, 318 F.R.D. at 230

(citing *Med. Protective Co. v. Am. Int'l Specialty Lines Ins. Co.*, Cause No. 1:13-CV-00357,

2014 WL 4979394, at *3 (N.D. Ind. Oct. 6, 2014); *Redding v. ProSight Specialty Mgmt. Co.*, CV

12-98-H-CCL, 2014 WL 11412743, at *2 (D. Mont. July 2, 2014); *Gomez v. Tyson Foods, Inc.*,

No. 8:08CV21, 2012 WL 3111897, at *4 (D. Neb. July 31, 2012); *Walt Disney Co. v. DeFabiis*,

168 F.R.D. 281, 284 (C.D. Cal 1996)).  Plaintiff bears the burden of proof on the issue of

damages.  *See Martins v. 3PD Inc.*, Civil Action No. 11-11313-DPW, 2014 WL 1271761, at *10

(D. Mass. Mar. 27, 2014).  "[C]ase law addressing in detail the nature of damages recoverable as

a result of misclassification remains limited," and the Massachusetts Supreme Judicial Court

("SJC") has "explicitly acknowledged the issues surrounding the 'effort to recast' what is on

paper an independent contractor agreement into an employment agreement."  *Id.*, at *5 (quoting

*Awuah v. Coverall N. Am.*, 952 N.E.2d 890, 897 n.20 (Mass. 2011)).  In view of the complexity

acknowledged by the SJC, Plaintiff's contention that the only documents relevant to potential

damages are in the possession, custody, or control of Defendants is implausible.  In any event,

Plaintiff would have an obligation to produce documents underlying his calculation of losses

even if Defendants already have some, or even all, of those documents.  For these reasons, this

aspect of Defendants' Motion is granted.

      D.    <u>Fees and Costs</u>

      Plaintiff is not entitled to the fees and costs he seeks in his discovery motion (Dkt. No. 63

at 6).  Defendants represent that they did not decline to produce the documents whose production

Plaintiff sought to compel, and, by the time of hearing, responsive documents had either been

produced or were in the process of being assembled.  "It appears from the documents of record, that counsel had been conferring about the document request and had not yet reached an impasse before the motion was filed …."  *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996). Fed. R. Civ. P. 37(a)(5)(A)(i) does not authorize an award of fees when the moving party files an premature or unnecessary motion to compel.

Defendants also seek an award of fees and costs.  Fed. R. Civ. P. 37(a)(5)(C) provides that if, as in this case, a party's motion to compel in granted in part and denied in part, the court "may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." At this time, having not fully heard from the Plaintiff on the subject of payment of the Defendants' fees and costs, the court declines to apportion expenses and award Defendants any part of the fees and expenses they incurred in filing Defendants' Motion.  In connection with Defendants' request for fees and costs, the court notes that in Plaintiff's second motion to compel the production of documents by Defendants, filed on October 1, 2019, Plaintiff asserts that "[a]s overarching considerations, with respect to all the discovery requests in dispute: the amount in controversy in this important case, for its value as precedent, is in the seven figures" (Dkt. No. 87 at 2).  In view of this declaration about the claimed importance of *Plaintiff's* claimed right to discovery, Plaintiff has been remarkably – and unacceptably – cavalier about his discovery obligations to Defendants.  Based on the parties' filings, he has failed to participate reasonably in discovery.  If he persists in this failure, he is likely to face sanctions in the future.

IV.   CONCLUSION

Plaintiff's Motion (Dkt. No. 63) is granted in part and denied in part on the terms set forth herein.  If Defendants have not complied with Fed. R. Civ P. 34(b)(C) in their response to Plaintiff's document request 9, they will serve a supplemental response to the request no later

16

than 14 days from the issuance of this order.  Plaintiff's request for fees and costs is denied.

Defendants' Motion (Dkt. No. 65) is granted in part and denied in part on the terms set forth

herein.  Plaintiff will produce all documents he is required to produce under the terms of this

order by no later than 21 days from issuance of this order.  Defendants' request for fees and costs

is denied.

It is so ordered.

Dated: October 21, 2019                          /s/ Katherine A. Robertson
                                                 KATHERINE A. ROBERTSON
                                                 U.S. MAGISTRATE JUDGE