UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| LEONARD VISCITO, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Case No. 3:18-30132-MGM |
| | ) | |
| NATIONAL PLANNING | ) | |
| CORPORATION, JOHN JOHNSON, | ) | |
| MAURA COLLINS AND JOHN AND/OR | ) | |
| JANE DOES, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION FOR
PROTECTIVE ORDER AND TO QUASH SUBPOENAS DIRECTED TO BARRY STOWE,
SCOTT ROMINE, AND VANESSA LAMBRECHTS
(Dkt. No. 119)

ROBERTSON, U.S.M.J.

I.    Introduction

Plaintiff Leonard Viscito ("Plaintiff") brings claims against the defendants, National

Planning Corporation ("NPC"), John Johnson, and Maura Collins (collectively, "Defendants")

under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (Count I) ("FLSA"); the

Massachusetts Independent Contractor Law, Mass. Gen. Laws ch. 149, § 148B (Count II); the

Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148 (Count III) ("MWA"); and, against

NPC only, for Unjust Enrichment (Count IV); Breach of the Implied Covenant of Good Faith

and Fair Dealing (Count V); and Quantum Meruit (Count VI) (Dkt. No. 54, Second Am. Compl.,

¶¶ 29, 33, 37, 42, 47, 50).  Before the court is Defendants' Motion for Protective Order and to

Quash Subpoenas Directed to Barry Stowe, Scott Romine, and Vanessa Lambrechts (Dkt. No.

119) ("Defendants' Motion").  The court heard argument from the parties on May 20, 2020 and

took the motion under advisement (Dkt. No. 130).  For the reasons set forth below, Defendants'

Motion is GRANTED.

II.      Relevant Background

1.   Factual Allegations in Second Amended Complaint

In Plaintiff's Second Amended Complaint, he alleges that he is a resident of Florida who worked for NPC, a national financial services corporation, as a registered representative, insurance agent, and investment advisor from approximately November 14, 2013 through November 29, 2017 out of an office located in Springfield, Massachusetts (Second Am. Compl. ¶¶ 2, 16-17).  Plaintiff alleges that under the Independent Contractor Agreement he executed, NPC "exercised a substantial degree of control over" how Plaintiff conducted his business (Second Am. Compl. ¶ 18), and that he was misclassified as an independent contractor (Second Am. Compl. ¶ 24).  He alleges that he was "therefore forced to incur substantial costs, fees and deductions (including, among other things, for rent, utilities, supplies, payroll/commission expenses, professional fees, advertising, travel expenses, entertainment, recruiting, insurance, charges, payroll taxes and interest) that he would not have incurred had he been properly classified as an employee" and that he was deprived of benefits, including retirement benefits, vacation time, and reimbursement of business expenses (Second Am. Compl. ¶ 24).

Plaintiff ceased to be affiliated with NPC when its assets were sold in or around 2017 to LPL Investment Services ("LPL") and NPC ceased to exist.

2.   Subpoenas at Issue

On or around April 9, 2020, Plaintiff served deposition subpoenas duces tecum on: (1) Barry Stowe ("Stowe"), commanding him to appear, with documents, for a deposition to be taken by videoconference on April 16, 2020 at 9:00 a.m. (Dkt. No. 120-1 at 2-5; (2) Scott E. Romine ("Romine"), commanding him to appear, with documents, for a deposition to be taken by videoconference on April 17, 2020 at 9:00 a.m. (Dkt. No. 120-2 at 2-5); and (3) Vanessa

2

Lambrechts ("Lambrechts"), commanding her to appear, with documents, for a deposition to be taken by videoconference on April 14, 2020 at 9:00 p.m. (Dkt. No. 120-3 at 2-5). Defendants represent – and Plaintiff has not disputed – that Stowe is presently the Executive Director of Prudential PLC and was formerly the Chief Executive Officer of one of the affiliate entities of NPC's parent company (Dkt. No. 120 at 2). Plaintiff has directed Stowe to produce documents related to his separation from NPC or any NPC-related entity; documents, including personal tax documents, related to payments received by Stowe in connection with his separation from NPC or a related entity; and documents related to Stowe's independent directorship on the board of Zurich American Insurance Company "(Zurich"), including information related to compensation for the position (Dkt. No. 120-1 at 5).

Defendants represent – and Plaintiff does not dispute – that Romine is the former President and Chief Executive Officer of National Planning Holdings, NPC's parent company, and is currently the President of an affiliate of NPC's parent company (Dkt. No. 120 at 2). Plaintiff has directed Romine to produce documents related to his separation from NPC or its parent corporation; documents, including personal tax documents, related to payments received by Stowe in connection with his separation from NPC or a related entity; and a comprehensive list of NPC corporate documents, including, among others  financial statements, tax returns, and all documents identifying all companies and account holders that paid commission income to NPC  or its parent company (Dkt. No. 120-2 at 5).

Defendants represent that Lambrechts is the former vice President and Controller of NPC's parent corporation and is no longer employed by an entity affiliated with NPC (Dkt. No. 120 at 2). Plaintiff has directed Lambrechts to produce documents related to her separation from NPC or its parent corporation; and documents, including personal tax documents, related to

3

payments received by Lambrechts in connection with her separation from NPC or a related entity

(Dkt. No. 120-3 at 5).

III.     Discussion

A.   General Legal Principles

> A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)'s overriding relevance requirement.  While relevance is generously construed, "[a] party … from whom discovery is sought may move for a protective order … [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c).  "Under Rule 26, the trial court is required to balance the burden of proposed discovery against the likely benefit."  *Gill Gulfstream Park Racing Assoc[.], Inc.*, 399 F.3d 391, 400 (1st Cir. 2005).  The Court thus engages in a balancing test, weighing the [plaintiff's] need for this information, the availability of other means of obtaining it, and the burden placed on the [non-parties] by the subpoenas.

*E.E.O.C. v. Tex. Roadhouse, Inc.*, 303 F.R.D. 1, 2 (D. Mass. 2014) (sixth, seventh, and eighth

alterations added); *see also In re Wood*, No. 2:19-mc-00164-JHR, 2019 WL 5789848, at *2 (D.

Me. Nov. 6, 2019).  "The subpoenaing party has the burden of establishing that the requested

information is relevant to its claims or defenses."  *Jee Family Holdings, LLC v. San Jorge*

*Children's Healthcare, Inc.*, 297 F.R.D. 19, 20 (D.P.R. 2014) (citing *Am. Elec. Power Co., Inc.*

*v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).  "The movant bears the burden of

establishing that the portions of the subpoena at issue impose an undue burden on him [or her]."

*In re Wood*, 2019 WL 5789848, at *1.

In seeking a protective order or to quash the Rule 45 subpoenas addressed to Stowe,

Romine, and Lambrechts, the defendants invoke the so-called "apex doctrine," which is "an

analytical framework [sometimes] used by courts in assessing whether to permit the depositions

of individuals at the 'apex' of corporations and other entities.  The doctrine recognizes that

depositions of high-level officers severely burden[] those officers and the entities they represent,

and that adversaries might use this severe burden to their unfair advantage." *United States ex rel. Galmines v. Novartis Pharms. Corp.*, CIVIL ACTION No. 06-3213, 2015 WL 4973626, at *1 (E.D. Pa. Aug. 20, 2015) (citing *In Re Tylenol (Acetaminophen) Mktg., Sales Practices & Prods. Liab. Litig.*, Civil Action No. 2:13-MD-02436, 2014 WL 3035791, at *2 (E.D. Pa. July 1, 2014).

> The apex doctrine does not represent an exception to the rule that a party seeking to quash a subpoena bears the "heavy burden" of demonstrating that the subpoena represents an undue burden. *See Frank Brunckhorst Co. v. Ihm*, No. MISC. 12-0217, 2012 WL 5250399, at *4 (E.D. Pa. Oct. 23, 2012). The apex doctrine is merely a tool for guiding the Court's analysis in determining whether to limit discovery under Rule 26(b)(2)(C) because the discovery can be obtained from some other source that is more convenient, less burdensome, or less expensive [or is not proportional to the needs of the case].

*Id.* at *2. A threshold question is whether the proposed deponent has unique personal knowledge related to the claim being litigated that cannot be provided by another witness. *Cf. Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (discussing limits on depositions of high-ranking government officials).

Plaintiff asserts that he was misclassified as an independent contractor while he was affiliated with NPC and is entitled to damages on this basis (Second Am. Compl. ¶¶ 28-51). He does not purport to represent a class or collective of similarly situated employees. Relevant issues on which Plaintiff is entitled to discovery include the control and direction exercised by NPC over Plaintiff's performance of the services he provided; the usual course and nature of NPC's business; whether Plaintiff was running an independent enterprise; and to whom he was providing services (i.e., to his personal book of business or to NPC). *See, e.g., Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 118-125 (D. Mass. 2015). Plaintiff is also entitled to discovery of information about wages and benefits to which he would have been entitled as an NPC employee. *See Somers v. Converged Access, Inc.*, 911 N.E.2d 739, 751 (Mass. 2009).

"[T]he [Massachusetts] Wage Act does not include severance pay." *Discipio v. Anacorp., Inc.*, 831 F. Supp. 2d 392, 396 (D. Mass. 2011).

     B.    <u>Discussion</u>

     1.    Rule 45 Deposition Subpoena Duces Tecum Directed to Stowe

Plaintiff has identified two points on which he claims Stowe is likely to have relevant knowledge.  First, he asserts that Stowe, as the CEO of Jackson Holdings, LLC, "is expected to have personal knowledge with respect to issues of account value and transfer as part of the LPL sale" which, Plaintiff claims, "is related to NPC ownership of the customers and control of the registered representatives" (Dkt. No. 121 at 17).  The Stowe subpoena requires Stowe to produce any documents relating to his separation from any corporate entity associated with NPC and any documents, including his personal tax returns, evidencing payments for his separation from any corporate entity associated with NPC (Dkt. No. 120-1 at 5).

Second, and "[m]ore directly," Plaintiff seeks to depose Stowe "to discover information on Viscito's claim for damages from NPC's direction that registered representatives could not receive commissions offered to them for advising customers on the Zurich b[u]y back offer" (Dkt. No. 121 at 18).  On this basis, Plaintiff's Rule 45 subpoena directs Stowe to produce all documents "memorializing [his] independent directorship on the board of Zurich American Insurance Company, including documents evidencing compensation and taxes on compensation" (Dkt. No. 120-1 at 5).

Turning to Plaintiff's first general assertion that a CEO "two levels up" from NPC's CEO, John Johnson ("Johnson"), can reasonably be expected to have personal knowledge of account value and transfer of representative accounts in connection with the LPL transaction, I have already ruled in connection with an earlier motion to compel filed by Plaintiff that he failed

to demonstrate a need for additional information related to the sale of NPC assets to LPL (Dkt. No. 111).  The defendants have produced documents concerning the sale of NPC assets to LPL. Those documents show that, when LPL purchased NPC's assets, the asset purchase agreement provided that LPL would have the right to recruit NPC registered representatives to move to LPL (Dkt. No. 121 at 14-15).  After the court ruled that Plaintiff had failed to demonstrate that discovery of any additional information concerning the sale of NPC assets to LPL would be proportional to the needs of the case, Plaintiff deposed Johnson who, contrary to Plaintiff's representations, was informative in his answers to Plaintiff's questions about the process of transferring NPC registered representatives to LPL based on his personal knowledge of, and personal involvement in, the process.[1]  Discovery of additional information on this issue is not proportional to the needs of this case and Plaintiff has failed to demonstrate material knowledge on Stowe's part specific to Plaintiff's case, or that he has a need for such testimony from Stowe as opposed to testimony from someone more directly affiliated with NPC.  He has made no showing of the relevance of Stowe's personal financial information, including information related to severance, if any, that Stowe may have received.

On the second point, I previously denied without prejudice Plaintiff's request to compel a further production of documents concerning NPC's decision to prohibit its registered representatives from accepting incentive compensation from Zurich in connection with an annuity buy-back program "unless the plaintiff develop[ed] credible information that NPC's explanation in the documents already produced was inaccurate" (Dkt. No. 111).  Since then, deposition testimony from Gerry Gunderson and Johnson has confirmed NPC's explanation that

---

[1] At the court's request, the defendants filed the entire transcript of John Johnson's deposition under seal and the court has read it.  The court will direct the Clerk's Office to docket this transcript under seal.

it precluded its registered representatives from accepting incentive compensation in connection with the Zurich buy-back offer because it was concerned about an inherent conflict of interest (Dkt. No. 125-1 at 6-10).  Stowe's appointment in 2019 to Zurich's Board of Directors, after NPC made a decision that was presumably unfavorable to Zurich, is hardly information suggesting that NPC's explanation of its 2017 decision related to the Zurich buy-back offer was inaccurate or incomplete (Dkt. No. 125 at 3).  Leaving aside the question of whether the NPC's decision about the Zurich buy-back offer has more than tangential relevance to the claims Plaintiff has asserted in this case, Plaintiff has not shown that NPC's explanation of its position was inaccurate or incomplete.  There is no basis in this record for any discovery from Stowe about the Zurich buy-back offer.

For the foregoing reasons, so much of Defendants' Motion as seeks to quash the subpoena duces tecum directed to Stowe will be granted with prejudice.

2.   Rule 45 Deposition Subpoena Duces Tecum Directed to Romine

In addition to directing Romine to produce personal financial information such as tax documents, Plaintiff's subpoena directed Romine to produce a wide range of NPC corporate documents (Dkt. No. 120-2 at 5).  According to Plaintiff, Romine's only formal role in NPC was as a director (Dkt. No. 121 at 17).  Plaintiff has not shown that Romine was ever a custodian of NPC records.  NPC is a party to this case.  To the extent Plaintiff believes he did not receive copies of documents in NPC's possession, custody, or control, it was incumbent on him to obtain those documents from NPC, a party to this case and the legal custodian of those documents.  *See Am. Maplan Corp. v. Heilmayr*, 203 F.R.D. 499, 501-02 (D. Kan. 2001).  Plaintiff did not file motions to compel the production by NPC of the documents Plaintiff now seeks to obtain from Romine.  Plaintiff "cannot properly seek to obtain from [Romine] what belongs to another." *Id.*

at 502.  Further, Plaintiff has failed to show how documents related to Romine's personal financial circumstances, including any separation or severance pay he received from NPC or an entity affiliated with NPC, could be relevant to Plaintiff's claims.

Nor has Plaintiff satisfied his initial burden of showing that Romine has material information relevant to Plaintiff's claims that Plaintiff has not already obtained or could not obtain from a more convenient, less burdensome source.  *See* Fed. R. Civ. P. 26(b)(1); (c)(1). That Romine was President of the parent holding company of NPC does not mean that he "is certainly the officer with actual knowledge of the corporate operations of NPC" insofar as those operations are relevant to Plaintiff's claim that he was misclassified as an independent contractor (Dkt. No. 121 at 17).  Plaintiff deposed Johnson, the CEO of NPC at all times relevant to Plaintiff's claims (Second Am. Compl. ¶ 9).  Contrary to Plaintiff's contention, Johnson's deposition testimony was responsive, knowledgeable, and informative about the nature of NPC's business.  To the extent Plaintiff complains about gaps in the knowledge of individuals he deposed, if he genuinely desired to obtain the information he claims – unpersuasively – to be lacking, he had the option of a Rule 30(b)(6) deposition of NPC.  Plaintiff has not shown that Romine has unique knowledge concerning NPC's operations.  He has not shown that Romine had any involvement in Plaintiff's work for NPC.  He has not pointed to any relevant communication to which Romine was a party, nor has he pointed testimony from any other deponent tending to show that Romine would have information related to Plaintiff's claims.  *See Galmines*, 2015 WL 4973626, at *2-3.  In summary, Plaintiff has proffered nothing to show that a deposition of Romine is proportional to the need of the case.

For the foregoing reasons, so much of Defendants' Motion as seeks to quash Plaintiff's Rule 45 subpoena to Romine will be granted with prejudice.

3.   Rule 45 Deposition Subpoena Duces Tecum Directed to Lambrechts

Lambrechts was employed as the Vice President of Accounting and Finance and the

Controller of NPC's parent corporation (Dkt. No. 120 at 2).  She signed NPC's annual audited

report form X-17A-5, which was filed with the SEC, for the years 2014 through 2017.

Lambrechts no longer has any affiliation with an NPC-related entity (Dkt. No. 120 at 2).  On the

other hand, Maura Collins ("Collins"), who is a defendant and party to this lawsuit, was the

Chief Financial Officer and a Senior Vice President of NPC at all times relevant to the amended

complaint (Second Am. Compl. ¶¶ 5, 11-13).  "[C]oncern for the unwanted burden thrust upon

non-parties is a factor entitled to special weight in evaluating the balance of competing discovery

needs." *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998).  This point carries

particular weight when the individual to whom the subpoena is directed has no remaining

professional affiliation with the business involved in the lawsuit.  *See id.* (in contrast to non-

parties, "parties to a law suit must accept its travails as a natural concomitant of modern civil

litigation").

As of May 20, 2020, the date on which the court heard the parties on Defendants'

Motion, Plaintiff had noticed Collins' deposition.  He had not taken it for reasons related to the

COVID-19 pandemic (Dkt. No. 120 at 5, n.3).  Defense counsel indicated that Collins is

available for a deposition that is taken fully remotely.  Through counsel, Plaintiff represented

that he would be willing to take Collins' deposition fully remotely, and he may have done so by

this time.  Plaintiff has not shown that Lambrechts has any unique knowledge about Plaintiff's

agreement with NPC, the work he performed while he was affiliated with NPC, or NPC's

relationships with its registered representatives.  The topics on which Plaintiff claims that

Lambrechts' testimony is necessary (Dkt. No. 121 at 10-11) are topics about which Plaintiff has

questioned Johnson and would be expected to question Collins. He has not pointed to deposition testimony suggesting that Lambrechts is likely to have knowledge about NPC's financial affairs and business model that would be superior to, or different from, Collins' knowledge. If Plaintiff is unable to depose Collins, or, after doing so, can *genuinely* make the case that Lambrechts has unique personal knowledge that is relevant to the claims he has asserted in this case, Plaintiff likely will have shown that taking Lambrechts' deposition is proportional to the needs of the case and he may move for leave to do so. He has not shown that he is entitled to impose the burdens of a deposition on Lambrechts at this time. *See Cusumano*, 162 F.3d at 717. Because severance or separation payments are not recoverable in a Massachusetts Wage Act case, however, Plaintiff has not shown that he is, or ever would be, entitled to require Lambrechts to produce her confidential personal financial information, including income tax returns and documents showing severance or separation payments she has received from an NPC affiliated entity (or any entity).[2]

For the foregoing reasons, so much of Defendants' Motion as seeks to quash the subpoena duces tecum issued to Lambrechts will be granted. If necessary, Plaintiff may move for leave to take Lambrechts deposition based on a genuine need for specifically identified relevant information that he could not obtain from another source.

4. Sanctions

---

[2] To the extent Plaintiff attempts to justify seeking confidential personal financial information from Stowe, Romine and Lambrechts on the grounds that he has been required to produce *his* personal financial information, that attempt at equivalence is nonsensical (Dkt. No. 129 at 2 n.1). Plaintiff chose to bring this lawsuit to recover alleged lost income, squarely placing his personal financial information in issue, then sought to avoid making the requisite disclosures. Stowe, Romine, and Lambrechts are not parties to this case, have no stake in it, and are not seeking to recover for alleged lost income. They are not similarly situated to Plaintiff.

Defendants request that the court award sanctions against Plaintiff pursuant to 28 U.S.C. § 1927 ("Section 1927") and the inherent power of the court to impose sanctions on attorneys and parties for bad faith conduct in litigation (Dkt. No. 120 at 16-17).  Citing, *inter alia*, *Xiao Wei Catering Linkage in Inner Mongolia Co. Ltd. v. Inner Mongolia Xiao Wei Yang USA, Inc.*, CIVIL ACTION No. 15-10114-DJC, 2018 WL 1567604 (D. Mass. Mar. 30, 2018), the defendants argue that sanctions are warranted based on Plaintiff's unreasonable and unjustified failure to provide documents relevant to his claims, his premature filing of a summary judgment motion while refusing to provide documents and testimony relevant to the defendants' defenses, and his service of notices for last-minute Rule 45 depositions and the production of personal and confidential financial documents from senior executive officers with no unique knowledge concerning his claims, all of which, the defendants argue, are tactics that have vexatiously multiplied this proceeding (Dkt No. 120 at 17).  While the request is not without foundation on this record, the court declines to award sanctions at this time for the reasons set forth below.

"Because of its potency, 'a court's inherent power to shift attorneys' fees "should be used sparingly and reserved for egregious circumstances.""" *F.A.C., Inc. v. Cooperativa De Seguros De Vida De P.R.*, 561 F.3d 1, 6 (1st Cir. 2009) (quoting *Whitney Bros. Co. v. Sprafkin*, 60 F.3d 8, 15 (1st Cir. 1995) (quoting *Jones v. Winnepesaukee Realty*, 990 F.2d 1, 3 (1st Cir. 1993))).  This court has commented that Plaintiff's conduct with regard to his obligation to produce documents supporting his claims was unacceptably cavalier (Dkt. No. 92 at 16).  This court's view of Plaintiff's conduct in discovery has not changed.  His claim is not facially frivolous.  He appears offended, however, that the defendants, through discovery and their arguments to the court, are raising genuine questions about the basis of his claims and his right to recover damages.  He has propounded discovery that appears to be premised on petulance about how the case has played

out rather than legitimate need for the information sought by his discovery requests.  It is not clear from the record, however, that Plaintiff bears significant responsibility for the unreasonable discovery directed at Messrs. Stowe and Romine.  The service of a deposition subpoena directed to Ms. Lambrechts as a means of preserving the right to obtain testimony from her was not, in the circumstances, unreasonable.  In the court's view, the Stowe and Romine deposition subpoenas, while unjustified, even when considered in tandem with Plaintiff's cavalier disregard of his obligations to provide discovery relevant to his claims, do not constitute the rare example of egregious misconduct that would warrant the court in exercising its inherent power to sanction a party's conduct in litigation.

Section 1927 provides, in pertinent part, that "[a]ny attorney or other person admitted to conduct cases in any court of the United States … who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct."  By its terms, Section 1927 applies to attorneys, not parties.  "Litigation conduct qualifies as 'vexatious' if it is 'harassing or annoying, regardless of whether it is intended to be so.'"  *Lambo-Ortiz v. Oriz-Velez*, 630 F.3d 228, 245 (1st Cir. 2010) (quoting *Cruz v. Savage*, 896 F.2d 626, 632 (1st Cir. 1990)).  "Garden-variety carelessness or even incompetence, without more, will not suffice to ground the imposition of sanctions under section 1927."  *Jensen v. Phillips Screw Co.*, 546 F.3d 59, 64 (1st Cir. 2008).  A finding of bad faith is not essential, but it is a "telltale" indication of sanctionable conduct.  *Id.*  In considering a request for sanctions, a court should be mindful that sanctions for conduct in the course of litigation risk "'dampen[ing] the legitimate zeal of an attorney in representing his client."  *Lamboy-Ortiz*, 630 F.3d at 248 (quoting H.R. Rep. No. 96-1234 H.R. Rep. No. 96-1234, at 8, 1980 U.S.C.C.A.N. at 2782).  Section 1927 exists to punish a

course of action, not merely individual acts.  *See Jensen*, 546 F.3d at 66 (citing *Bowler v. U.S. INS*, 901 F. Supp. 597, 605 (S.D.N.Y. 1995)).

In *Xiao Wei Catering Linkage*, Magistrate Judge Kelly imposed sanctions when a party and its attorney served Rule 45 subpoenas while the parties were in the process of conferring about the scope of discovery under Rule 34, then "responded to a motion to quash [those subpoenas] with fallacious legal arguments and filed a baseless cross-motion for sanctions that, among other things, wrongly accused opposing counsel of falsifying documents."  *Xiao Wei Catering Linkage*, 2018 WL 1567604, at *6.  The attorney admitted that he had falsely accused opposing counsel of fabricating evidence.  The court noted that there were five prior cases in which the attorney had shown a striking pattern of engaging in abusive litigation tactics.  *Id.* at *5.

In the instant case, counsel's complaints about the defendants' discovery responses have, for the most part, been without foundation and his arguments in support of his motions to compel and in opposition to the defendants' discovery requests have been largely unpersuasive.  Nonetheless, the court is guided by the First Circuit's observation that "[d]istinguishing between what is a vigorous but reasonable attempt to salvage a case that is going badly and a stubbornly capricious attempt to gain advantage by prolonging matters is not easy."  *Jensen*, 546 F.3d at 67.  Plaintiff's attorney has not engaged in baseless accusations against opposing counsel, made misrepresentations to the court, or disregarded the court's orders.  *Contrast Xiao Wei Catering Linkage*, 2018 WL 1567604, at *6-7; *Irwin Indus. Tool Co. v. Bibow Indus., Inc.*, Civil Action No. 11-30023-DPW, 2014 WL 1323744, at *6 (D. Mass. Mar. 31, 2014).  While he may have come close, he has not crossed the line into territory where it can fairly be said that he "lack[s] a

firm grasp of the rules and responsibilities of attorneys practicing before this court." *Irwin Indus. Tool Co.*, 2014 WL 1323744, at *6.

      IV.    <u>Conclusion</u>

      For the foregoing reasons, Defendants' Motion (Dkt. No. 119) is GRANTED on the terms set forth herein.  No fees or costs.

It is so ordered.                    <u>/s/Katherine A. Robertson</u>
                                          KATHERINE A. ROBERTSON
                                          UNITED STATES MAGISTRATE JUDGE